## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS BELTRAN,<br><br>           Plaintiff,<br>   v.<br><br>2 DEER PARK DRIVE OPERATIONS LLC;<br>PARK PLACE CENTER; GENESIS<br>HEALTHCARE; and JOHN DOES 1-5 and 6-10<br><br>         Defendants. | CIVIL ACTION NO.: 3:20-cv-08454 (MAS/LHG) |

**DEFENDANTS 2 DEER PARK DRIVE OPERATIONS LLC D/B/A PARK PLACE
CENTER AND GENESIS HEALTHCARE LLC'S BRIEF IN SUPPORT OF
THEIR MOTION TO DISMISS COUNTS ONE THROUGH FOUR, SIX AND
SEVEN OF THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

**GENOVA BURNS LLC**
James Bucci, Esq.
Peter F. Berk, Esq.
Two Riverside Drive, Suite 502
Camden, New Jersey 08103
(856) 968-0686
Attorneys for Defendants,
2 Deer Park Drive Operations LLC d/b/a
Park Place Center and Genesis
Healthcare LLC

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................... 1

STATEMENT OF FACTS............................................................................ 4

LEGAL ARGUMENT ................................................................................ 6

A.    Count Three (CEPA) Fails To State a Cause of Action Because It
      Would Hold Defendants Liable For Complying with the Law and
      Would Contravene the Legislation's Intent. ...................................... 7

B.    Plaintiff's Wrongful Discharge Claim (Count Four) Should Dismissed
      for the Same Reasons as His CEPA claim.   .................................... 15

C.    Count One Should Be Dismissed Because Plaintiff Does Not Identify
      The Disability that Defendants allegedly perceived him as having.  ......... 15

D.    Plaintiff Cannot Bring A Claim For Discrimination Under The ESLL
      (Count Two) Because That Claim Was Waived By His Union............... 16

E.    Count Six Must Be Dismissed Because The FFCRA Does Not Apply
      To Employees Of Nursing Homes. .................................................. 17

F.    Count Seven Of The Complaint, Seeking "Equitable Relief," Should
      Be Dismissed Because Equitable Relief Is Not A Cause Of Action. ........  18

CONCLUSION.......................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ................................................................................... 6

Barber v. Hohl,
    40 N.J. Super. 526 (App. Div. 1956)........................................................... 18

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ................................................................................... 6

Bistrian v. Levi,
    696 F.3d 352 (3d Cir. 2012) ...................................................................... 7

Cowher v. Carson & Roberts,
    425 N.J. Super. 285 (App. Div. 2012) ....................................................... 15

Dzwonar v. McDevitt,
    177 N.J. 451 (2003)............................................................................... 8, 9

Endres v. Techneglas, Inc.,
    139 F.Supp.2d 624 (M.D. Pa. 2001) ........................................................ 16

Farmers Mut. Fire Ins. Co. of Salem v. New Jersey,
    215 N.J. 522 (2013)................................................................................. 11

Gaul v. AT & T, Inc.,
    955 F. Supp. 346 (D.N.J.1997) ................................................................ 16

Grande v. St. Clare's Health Sys.,
    230 N.J. 1 (2017)..................................................................................... 15

Hilinski v. Potter,
    2006 WL 2569214 (D.N.J. September 1, 2006) ......................................... 15

Maw v. Advanced Clinical Communs., Inc.,
    179 N.J. 439 (2004)................................................................................. 8

Mehlman v. Mobil Oil Corp.,
    153 N.J. 163 (1998)............................................................................. 2, 8

O'Connor v. Harms,
    111 N.J. Super. 22 (App. Div. 1970)......................................................... 18

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192,
   1196 (3d Cir. 1993) ................................................................. *passim*

Pierce v. Ortho Pharm. Corp.,
   84 N.J. 58 (1980) .................................................................... 15

Saint Peter's Univ. Hosp., supra, 185 N.J. at 14–15 ................................. 13

Tartaglia v. UBS PaineWebber, Inc.,
   197 N.J. 81 (2008) .................................................................. 15

TRW Inc. v. Andrews,
   534 U.S. 19 (2001) ............................................................... 13, 14

United States v. Cooper,
   396 F.3d 308 (3d Cir.2005) ....................................................... 13

Victor v. State,
   203 N.J. 383 (2010) ................................................................ 15

W. Penn Allegheny Health System, Inc. v. UPMC,
   627 F.3d 85 (3d Cir. 2010) ......................................................... 6

Williams v. Long,
   585 F.Supp.2d 679 (D. MD, 2008) ................................................. 4

Yanow v. Seven Oaks Park, Inc.,
   11 N.J. 341 (1953) ................................................................. 11

**Statutes**

FMLA § 102(a)(1)(F) ............................................................... 17

N.J.S.A. 10:5-1 to -49 .............................................................. 2

N.J.S.A. 34:11D-1 *et. seq.* ......................................................... 3

N.J.S.A. 34:11D-8(4) ............................................................... 16

N.J.S.A. 34:11D-12 .............................................................. *passim*

N.J.S.A. 34:11D-13 .........................................................2, 11, 12, 14

N.J.S.A. 34:19-1 to -14 ............................................................. 2

N.J.S.A. 34:19-3 .................................................................... 8

N.J.S.A. 34:19-5 ................................................................... 14

**Other Authorities**

85 Fed. Reg. 19,326 ................................................................................. 17

85 Fed. Reg. at 19,349 .............................................................................. 17

85 Fed. Reg. at 19,351 .............................................................................. 18

Fed. R. Evid. 902(5) ................................................................................... 4

FFCRA § 3102(a)(1) ................................................................................. 17

N.J.A.C. 12:70............................................................................ 12, 13, 14, 17

N.J.A.C. 12:70-1.1..................................................................................... 12

N.J.A.C. 12:70-1.2..................................................................................... 13

N.J.A.C. 12:70-1.3..................................................................................... 13

P.L. 116-127 "FFCRA" ............................................................................... 3

## PRELIMINARY STATEMENT

2 Deer Park Drive Operations LLC d/b/a Park Place Center ("Park Place") (improperly pled in the Complaint as a business entity) and Genesis Healthcare LLC (improperly pled in the Complaint as "Genesis Healthcare") (collectively referenced as "Defendants") seek dismissal of Counts One through Four, Six and Seven of Plaintiff Luis Beltran's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Park Place operates a long-term care facility (nursing home) in Monmouth Junction, New Jersey.  In his Complaint, Plaintiff alleges he was formerly employed by Park Place as a maintenance building technician.  On or about March 27, 2020, Plaintiff alleges that he learned that he had worked in the room of a resident later diagnosed with COVID-19.  Plaintiff alleges that he did not return to work because no doctor would test him for COVID-19 due to him not having the necessary symptoms.  According to his Complaint, on April 6, 2020, Plaintiff learned that his mother was diagnosed with COVID-19.  Although he continued to be asymptomatic after both exposures, Plaintiff refused to return to work despite Park Place making multiple requests, including warning him on April 9, 2020 that his employment would be terminated if he did not return to work.  Plaintiff alleges he was terminated on April 13, 2020 because he refused to return work due to his exposure to COVID-19.  Plaintiff now challenges his termination alleging it was wrongful under a variety of statutes and the common law.

Viewing his Complaint in the aggregate, Plaintiff is seeking to hold Defendants liable for following guidelines from the New Jersey Department of Health ("DOH") that permits health care facilities to require employees exposed to individuals with COVID-19, but who remain asymptomatic, to continue to work with appropriate safety measures in place.  The need to have

1

such employees work during a public health emergency should be readily apparent.  If accepted by the Court, Plaintiff's myopic approach to employees at a healthcare provider working during a public health emergency would render it nearly impossible to staff a long-term facility such as Park Place.

As a threshold matter, Plaintiff's Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14 ("CEPA") claim, set forth in Count Three, should be dismissed because it concerns only an alleged private harm to Plaintiff and not a harm to the public.  Mehlman v. Mobil Oil Corp., 153 N.J. 163, 189–90 (1998).  Plaintiff's CEPA claim should also be dismissed because, the source of public policy, N.J.S.A. 34:11D-12, identified in the Complaint cannot serve as the basis of a CEPA claim.  Plaintiff cannot rely upon N.J.S.A. 34:11D-12 to support a CEPA claim because, the Legislature passed a specific statute, N.J.S.A. 34:11D-13 (and the New Jersey Department of Labor ("DOL") issued regulations implementing same) that set forth a standard of liability and the limited remedy of reinstatement for violations of the N.J.S.A. 34:11D-12.  If CEPA provided a remedy for violations of N.J.S.A. 34:11D-12 then there would have been no reason for the Legislature to have passed N.J.S.A. 34:11D-13.  It is a long-accepted principle of statutory construction that the Legislature is aware of the law when it passes new laws and statute should not be interpreted so that certain language in it would be surplusage or irrelevant.  Count Four, "Wrongful Discharge in Violation of Public Policy" is the common law equivalent of a CEPA claim and should be dismissed for the same reasons.

Count One, alleging a "Perception of Disability Discrimination under the LAD" (New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49, "LAD") fails to state a claim because Plaintiff does not identify the disability that he believes Defendants perceived him as having, or that any action taken towards was the result of a perceived disability.  To the contrary, Plaintiff

pleads that Defendants repeatedly requested that he return to work, which effectively refutes any possible claim of disability discrimination.

Count Two, alleging "Discrimination under the ESLL" (Earned Sick Leave Law, N.J.S.A. 34:11D-1 *et. seq*., "ESLL") fails to state a cause of action because Plaintiff's Union waived his right to such a claim.  The ESLL specifically permits a Union to waive claims under the ESLL for its individual members.

Count Six, alleging "Interference under the FFCRA" (Family First Corona Relief Act, P.L. 116-127 "FFCRA") fails to state a claim because it does not apply to healthcare providers such as the Defendants.

Count Seven, alleging a claim for "Equitable Relief," should be dismissed because there is no such cause of action.  Equitable relief is a remedy, not an independent cause of action.

**STATEMENT OF FACTS**

Defendants dispute and do not admit the facts set forth by Plaintiff in the Complaint (A true and correct copy is attached Certification of Peter Berk), but nevertheless accept Plaintiff's version of the facts solely for purposes of this Motion, and only to the extent summarized below.

Plaintiff was employed by Park Place as full-time maintenance building technician from on or about May 16, 2016 to on or about April 13, 2020.  (Comp. ¶6).  Park Place is a nursing home in Monmouth Junction, New Jersey.[1]

In his Complaint, Plaintiff offers the following factual predicate. On or about March 24, 2020, Plaintiff and his supervisor, David Santos, performed work in the room of a resident who later tested positive for COVID-19.  (See Comp. ¶10).  On or about Friday March 27, 2020, Mr. Santos attended a meeting where he learned that the resident had tested positive for COVID-19. (Comp. ¶11).  Plaintiff inquired of Mr. Santos if they needed to get tested based upon their exposure.  (See Comp. ¶12).  Mr. Santos then spoke with the building administrator, Jennifer Jones, who advised that they did not need testing if they were asymptomatic.  (Comp. ¶13).  Over the ensuing weekend, Plaintiff began to experience a sore throat and weakness.  (Comp. ¶14).  On March 30, 2020, Plaintiff contacted Mr. Santos and advised that he was calling out because of a cough and a sore throat.  (Comp. ¶15).  Later that morning, Plaintiff received a phone call from someone in Human Resources, who told him that they were overnighting paperwork for him to

---

[1] Although Plaintiff did not plead the nature of Defendants' business in his Complaint, Plaintiff cannot credibly dispute that he worked in long term care facility (nursing home).  Should he try to do so, evidence that Park Place Center is a Medicare certified-nursing home may be found on the Medicare.gov website. See https://www.medicare.gov/nursinghomecompare/profile.html#profTab=0&ID=315362&Distn=0 .0&loc=08852&lat=40.3789957&lng=-74.5465436  (last visit July 23, 2020).  Williams v. Long, 585 F.Supp.2d 679 (D. MD, 2008)(Collecting cases holding that print outs from government websites were admissible pursuant to Fed. R. Evid. 902(5)).

take to his doctor to certify he was able to return to work. (See Comp. ¶17). Plaintiff contacted his primary care physician and the office told him they would get back to him. (Comp. ¶19). On March 31, 2020, Plaintiff again contacted his primary care physician's office and received the same response. (See Comp. ¶20). On April 1, 2020, Plaintiff again contacted his primary care physician's office and received the same response. (See Comp. ¶21). Plaintiff then contacted an urgent care facility, which advised that it was unable to see Plaintiff based upon his symptomology. (Comp. ¶22). Plaintiff called Mr. Santos and Human Resources to explain his situation. (Comp. ¶23). On April 2, 2020, Mr. Santos contacted Plaintiff and advised that if he was asymptomatic, he could return to work. (See Comp. ¶24).

That night, Plaintiff's mother, who typically watched Plaintiff's children while he worked, contacted Plaintiff and advised that she was being admitted to the hospital. (See Comp. ¶25). On April 3, 2020, Plaintiff contacted Mr. Santos and called out of work due to the health of his mother and the need to care for his children. (See Comp. ¶26). On April 6, 2020, Plaintiff received a call from the Hamilton Township Division of Health advising that his mother had tested positive for COVID-19, and Plaintiff needed to quarantine for two weeks. (Comp. ¶28). The Division of Health representative advised that she would contact Plaintiff's employer. (Comp. ¶29). Plaintiff contacted Mr. Santos and explained the situation, including the need for quarantine. (See Comp. ¶30). Mr. Santos advised that Plaintiff was still required to report to work. (Comp. ¶31). Plaintiff contacted Mr. Santos a second time, at which point, Mr. Santos said that Plaintiff could stay out until April 13, 2020, and that he was trying to buy him time. (Comp. ¶32). On or about April 9, 2020, Plaintiff received a letter from Defendants stating that he was required to return to work on April 13, 2020, and that if he did not do so, he would be separated from his employment. (Comp. ¶33). Plaintiff refused to return to work on April 13, 2020. (Comp. ¶34).

5

## **LEGAL ARGUMENT**

## **COUNTS ONE THROUGH FOUR, SIX AND SEVEN OF PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

As a general rule, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Twombly, 550 U.S. at 556. Accusations that "the-defendant-unlawfully-harmed-me" and "naked assertions devoid of further factual enhancement" will not suffice. Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint containing conclusory allegations without "further factual enhancement" will not survive a motion to dismiss, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," as opposed to facts showing misconduct, the motion will be granted. Id. at 678–79 (citations and internal quotation marks omitted). "[J]udging the sufficiency of a pleading is a context-dependent exercise" since "[s]ome claims require more factual explication than others to state a plausible claim for relief". W. Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010). Specifically, the more complicated ones may demand more factual allegations. Id. "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings ... [although a] limited exception exists for documents that are integral to or explicitly relied upon in the complaint." W. Penn Allegheny Health Sys., Inc., 627 F.3d 85, 97 n. 6; Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ( In deciding a motion to dismiss,". .

.courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

The Third Circuit in Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) detailed three steps to determine whether a complaint meets the pleading standard: 1) the court first outlines the elements a plaintiff must plead to state claim for relief; 2) then peels away allegations that are only conclusions, and 3) then identifies well-pled factual allegations, assumes their veracity and analyzes "whether they plausibly give rise to an entitlement of relief." Id.

Applying the Iqbal- Twombly standard to the matter at hand, it is clear that after stripping away the unadorned legal conclusions found in the Complaint, Plaintiff's allegations fail to set forth plausible claims for relief in Counts One through Four, Six and Seven of the Complaint. [2]

A. Count Three (CEPA) Fails To State a Cause of Action Because It Would Hold Defendants Liable For Complying with the Law and Would Contravene the Legislation's Intent.

Plaintiff is attempting to have this Court hold that an individual's CEPA claim can be used to contravene guidance from the DOH applicable to all health care facilities.  According to Plaintiff's Complaint, he, not his employer, has the exclusive authority to decide whether to return to work after being exposed to a COVD-19 positive individual.  Plaintiff's argument is contrary to the purpose of CEPA because, it would permit a cause of action for a private harm and require a finding that his objection to an employer's conduct done in accordance with a mandate from the DOH is unlawful or dangerous to public health.

CEPA prohibits an employer from taking retaliatory action against an employee who discloses, objects to, or refuses to participate in certain actions that the employee reasonably

---

[2]  Defendants are not moving to dismiss Count Five, which alleges a violation of the Family Medical Leave Act. Defendants nonetheless deny the allegations in Count Five.

believes are illegal or in violation of public policy.   N.J.S.A. 34:19-3.[3]   As explained by the Supreme Court in <u>Maw v. Advanced Clinical Communs., Inc.</u>, 179 N.J. 439, 446 (2004), CEPA is designed to "'prevent retaliation against those employees who object to employer conduct that they reasonably believe to be *unlawful or indisputably dangerous to the public health, safety or welfare*.' " (emphasis in original);   <u>Mehlman v. Mobil Oil Corp.</u>, 153 N.J. 163, 189–90 (1998) ( "[T]he offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee.").   "[T]he complained of activity must have public ramifications, and ... the dispute between employer and employee must be more than a private disagreement."   <u>Maw v. Advanced Clinical Communs., Inc.</u>, 179 N.J. 439, 445 (2004).   Here, Plaintiff's CEPA claim should be dismissed because it only concerns a private harm to him and does not concern conduct that could be considered unlawful or indisputably dangerous to the public health, safety, or welfare.

Park Place's request that Plaintiff return to work cannot be considered unlawful or dangerous because, the DOH expressly authorized healthcare facilities, such as Defendants, to decide whether asymptomatic employees who were exposed to COVID-19 should continue to work.[4]   In a March 30, 2020 document titled, "Guidance for COVID-19 Diagnosed and/or Exposed Healthcare Personnel," the New Jersey Department of Health expressly advised:

---

[3] A *prima facie* case of unlawful retaliation under CEPA consists of the following elements: (1) the plaintiff reasonably believed the employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) a "whistle-blowing" activity, as described in  N.J.S.A. 34:19-3 was performed; (3) an adverse employment action was taken against the plaintiff; and (4) a causal connection exists between the whistleblowing activity and the adverse employment action.   <u>Dzwonar v. McDevitt</u>, 177 N.J. 451, 462 (2003). (Citations omitted).

[4] On April 30, 2020, the Centers for Disease Control and Prevention (CDC) issued new guidance titled "Strategies to Mitigate Healthcare Personnel Staffing Shortages." As part of this guidance, the CDC directed that healthcare facilities to "Develop[] plans to allow asymptomatic HCP who have had an unprotected exposure to SARS-CoV-2 (the virus that causes COVID-19) but are not known to be infected to continue to work."   <u>https://www.cdc.gov/coronavirus/2019-ncov/hcp/mitigating-staff-shortages.html</u> (Last visited July 23, 2020).   The CDC noted,

Key Points:

…

- When overburdened, healthcare facilities may consider having asymptomatic staff who were considered HIGH and MEDIUM risk exposures to COVID-19 continue to work while masked.

…

In facilities where staff attendance is strained by excessive callouts and furloughs, healthcare facilities **may consider allowing asymptomatic HCP who have had HIGH or MEDIUM risk exposure to COVID-19 to continue to work**…"

NJ Department of Guidance for COVID-19 Diagnosed and/or Exposed Healthcare Personnel, dated March 30, 2020, available at https://www.nj.gov/health/cd/documents/topics/NCOV/LINCS_Healthcare_Personnel_Return_to_Work.pdf (last visited on July 23, 2020) (emphasis in original).  Similarly, in a document titled, "Frequently Asked Questions Healthcare Workers and COVID-19 March 29, 2020," the DOH addressed a scenario similar to Plaintiff's (potentially exposed to COVID-19 positive individual but asymptomatic):

*If someone in my family tested positive for COVID-19, what should I do?*

If you are identified as a **close contact** to someone with COVID-19, you may have been told this by your healthcare provider, your employer, your local health department or the person themselves. In general**, close contact means being within 6 feet of a person for longer than 10 minutes.** Contact your supervisor or employer. Remain on home isolation until you receive additional guidance from your employer on when to return to work and what precautions to take. See "Frequently Asked Questions for Contacts to Persons with Confirmed COVID-19" for additional information about isolation and testing. **If you have <u>not</u> been a close contact to someone with COVID-19 and do not have symptoms**, then you are likely to be at lower risk for infection and **can continue to go to work per the policy and guidance of your employer.**

…

---

"Maintaining appropriate staffing in healthcare facilities is essential to providing a safe work environment for healthcare personnel (HCP) and safe patient care. As the COVID-19 pandemic progresses, staffing shortages will likely occur due to HCP exposures, illness, or need to care for family members at home. Healthcare facilities must be prepared for potential staffing shortages and have plans and processes in place to mitigate these.." Id.

9

> *What [if] I had an exposure to a patient with COVID-19 but I'm not sick and I don't have symptoms?*
>
> You should **monitor your health for fever, cough and shortness of breath during the 14 days** after the last day you were in close contact with the sick person with COVID-19. **You may be asked to self quarantine at home or work with a mask during this period.** This will depend on the policies and staffing needs of your employer.

https://www.nj.gov/health/cd/documents/topics/NCOV/FAQs_For_HCW_and_COVID19.pdf

(last visited July 23, 2020) (emphasis in original).   The foregoing DOH guidance may be synthesized to the following guidelines:

- A healthcare facility may allow an asymptomatic employee who had HIGH or MEDIUM risk exposure to COVID-19 to continue to work;

- If an employee of a healthcare provider is in close contact to someone with COVID-19, he should contact his supervisor or employer for additional guidance on when to return to work and what precautions to take;

- The healthcare facility will decide whether the employee should self-quarantine or work with a mask based upon its policies and staffing needs.

In his Complaint, Plaintiff admittedly rejected these mandates from the DOH.  According to his Complaint, Plaintiff may have been exposed to a COVID-19 patient at work (Comp. ¶11) and at home (Comp. ¶ 28), was asymptomatic (See Comp. ¶22), was informed on multiple occasions by his employer to return to work and refused to do so.  (Comp. ¶¶24, 33).  It would turn CEPA on its head to hold an employer liable for complying with applicable DOH guidance in the manner requested by Plaintiff and must be rejected.

Plaintiff's CEPA claim fails for another reason.  He cannot rely upon N.J.S.A. 34:11D-12 to provide the public policy mandate for  his CEPA claim because the Legislature has passed

another statute, N.J.S.A. 34:11D-13 that provides the remedy for alleged violation of N.J.S.A. 34:11D-12.  If employees covered by N.J.S.A. 34:11D-12 were protected by CEPA, there would have been no reason for the Legislature to pass N.J.S.A. 34:11D-13.  The Legislature is presumed to be aware of the decisional law of this State. Farmers Mut. Fire Ins. Co. of Salem v. New Jersey, 215 N.J. 522, 543-544 (2013)(citing Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 350, (1953) (noting that courts presume Legislature is "familiar not only with the statutory law of the State, but also with the common law")).  Presumably, the Legislature was aware that CEPA did not protect employees who experience a "private harm," so it passed N.J.S.A. 34:11D-13.

On March 20, 2020, New Jersey Governor, Phil Murphy, signed legislation (the "Law") prohibiting employers from taking any adverse employment action against employees who take, or request, time off due to an infectious disease that could affect others at work, based on a written recommendation of a New Jersey licensed medical professional. P.L. 2020, c. 9.  The Law became effective upon enactment.  N.J.S.A. 34:11D-12.  The statute states in pertinent part:

> An employer shall not, during the Public Health Emergency and State of Emergency declared by the Governor in Executive Order 103 of 2020 concerning the coronavirus disease 2019 pandemic, terminate or otherwise penalize an employee if the employee requests or takes time off from work based on the written or electronically transmitted recommendation of a medical professional licensed in New Jersey that the employee take that time off for a specified period of time because the employee has, or is likely to have, an infectious disease, as defined in section 2 of P.L.2005, c. 222 (C.26:13-2), which may infect others at the employee's workplace.

N.J.S.A. 34:11D-12.  In addition to passing N.J.S.A. 34:11D-12, another statute, N.J.S.A 34:11D-13, titled "Violation of 34:11D-12; penalty," was passed that, as the name suggests, sets forth the penalty for violating N.J.S.A. 34:11D-12.  N.J.S.A. 34:11D-13, provides in pertinent part:

> If an employer violates the provisions of section 1 of this act, the employee affected by the violation may file a written complaint with the Commissioner of Labor and Workforce Development or initiate an action in a court of competent jurisdiction, to seek reinstatement to employment. If the employer is found by a preponderance of the evidence to be in

> violation, the court or the commissioner shall order the reinstatement the employee to the position previously held with no reduction in seniority, status, employment benefits, pay, and other terms and conditions of employment and fine the employer $2,500 for each violation of section 1 of this act.

Id.

On April 1, 2020, the New Jersey Department of Labor and Workforce Development ("NJDOL") adopted temporary emergency new rules implementing the Law and concurrently proposed the same rules for permanent adoption.  The regulations, which became effective upon their emergency adoption, are codified at N.J.A.C. 12:70 (the "Regulations"). As explained in N.J.A.C. 12:70-1.1, the purpose of the Regulations and the Law that they are implementing:

> The purpose of this chapter is to effectuate P.L. 2020, c. 9, which, during the Public Health Emergency and State of Emergency declared by Governor Murphy in Executive Order No. 103 (2020) concerning the coronavirus disease 2019 (COVID-19) pandemic, prohibits an employer from terminating or otherwise penalizing an employee, if the employee requests or takes time off from work based on the written or electronically transmitted recommendation of a medical professional licensed in New Jersey that the employee take that time off for a specified period of time because the employee has, or is likely to have, an infectious disease that may infect others at the employee's workplace.

N.J.A.C. 12:70-1.1.  The "Social Statement" issued in support of the Regulations explain:

> The emergency adopted and concurrently proposed new rules would have a positive social impact in that they, along with the Act, would during the Public Health Emergency and State of Emergency declared by the Governor in Executive Order No. 103 (2020) concerning the COVID-19 pandemic, protect employees from termination or the imposition of other penalties by their employers when they must take time off from work based on the recommendation of a medical professional because they have, or are likely to have, an infectious disease that may infect others at the employee's workplace. This is beneficial for the protected employee, but also for the public in general, since during this unprecedented public health crisis everyone benefits when those who are sick stay at home, rather than come to work, thereby slowing the spread of the virus and protecting the State's healthcare facilities from becoming overwhelmed. Furthermore, the new rules would have a positive social impact in that they would minimize any possible confusion as to who is covered by, and what acts are prohibited under, the Act.  Finally, the new rules establish a regulatory framework for the ordering of reinstatement and

12

assessment of penalties and the processing of appeals where a violation of the Act has occurred, thereby enabling the Department to effectively enforce the law.

2020 NJ REG TEXT 552708 (NS).

The Regulations define several of the terms used in the Law, including, of most significance, "protected leave," which is defined as:

> leave from work taken by an employee during the Public Health Emergency and State of Emergency declared by the Governor in Executive Order No. 103 (2020) concerning the COVID-19 pandemic, **based on the written or electronically transmitted recommendation of a medical professional licensed in New Jersey** that the employee take that time off for a specified period of time because the employee has, or is likely to have, an infectious disease that may infect others at the employee's workplace.

N.J.A.C. 12:70-1.2 (emphasis added).  Significantly, the Regulations reiterate the Law's reinstatement requirement, which provides that an employee returning from protected leave must be reinstated to the position the employee held immediately prior to taking protected leave, with no reduction in seniority, status, employment benefits, pay, or other terms and conditions of employment. See N.J.A.C. 12:70-1.3.

To permit a plaintiff to use N.J.S.A. 34:11D-12 as the basis for a CEPA claim would violate the anti-superfluousness canon of statutory interpretation. United States v. Cooper, 396 F.3d 308, 312 (3d Cir.2005) ("It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous.").  The "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001).  "Statutes that deal with the same matter or subject should be read in *pari materia* and construed together as a 'unitary and harmonious whole.'" Saint Peter's Univ. Hosp., supra, 185 N.J. at 14–15. (quotation marks and

citation omitted).  An examination of the N.J.S.A 34:11D-12, and its regulations, demonstrate the conflict that Plaintiff is attempting to create between the Law and CEPA.

Plaintiff's CEPA count depends upon the Court concluding that the Law's phrase, "based on the written or electronically transmitted recommendation of a medical professional licensed," to be "superfluous, void, or insignificant" and of no legal significance.  <u>TRW Inc.</u>, <u>supra</u>.  In making this request, Plaintiff is asking this Court to effectively rewrite N.J.S.A. 34:11D-12 to read as follows: "An employer shall not, during the Public Health Emergency and State of Emergency declared by the Governor in Executive Order 103 of 2020 concerning the coronavirus disease 2019 pandemic, terminate or otherwise penalize an employee" who takes "time off for a specified period of time because the employee has, or is likely to have, an infectious disease."  Plaintiff is also asking that this Court strike or otherwise find insignificant the limited remedy of reinstatement to a successful plaintiff in N.J.S.A. 34:11D-13 and replace it with CEPA's more expansive remedies provision.  <u>See</u> N.J.S.A. 34:19-5. (CEPA permits, "All remedies available in common law tort actions shall be available to prevailing plaintiffs. These remedies are in addition to any legal or equitable relief provided by this act or any other statute.").

Moreover, Plaintiff cannot amend his Complaint to bring a count under the Law because he admittedly does not have the note from a medical provider to justify his absence  Plaintiff does not plead or otherwise claim to have a "written or electronically transmitted recommendation of a medical professional" that he "has, or is likely to have, an infectious disease that may infect others at the employee's workplace. "  Without this recommendation, Plaintiff cannot bring a cause of action under the Law.

B.  Plaintiff's Wrongful Discharge Claim (Count Four) Should Dismissed for the
Same Reasons as His CEPA claim.

Plaintiff also asserts a common law claim for whistleblowing under Pierce v. Ortho Pharm.

Corp., 84 N.J. 58 (1980).   The Supreme Court has held that, despite some differences with CEPA,

the "two avenues for relief are harmonious." Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81,

103 (2008).  Accordingly, Plaintiff's Pierce claim should be dismissed for the same reasons as his

CEPA claim.

C.  Count One Should Be Dismissed Because Plaintiff Does Not Identify The
Disability that Defendants allegedly perceived him as having.

To state a *prima facie* case for disability or perceived disability discrimination under the

LAD, a plaintiff must allege: (1) a disability or the employer's perception that the employee was

disabled; (2) the employee remains qualified to perform the essential functions of the job and was

performing at a level that met the employer's expectations; (3) an adverse employment action

because of the disability or perceived disability; and (4) the employer thereafter sought a similarly

qualified individual. Grande v. St. Clare's Health Sys., 230 N.J. 1, 17-18 (2017); Victor v. State,

203 N.J. 383, 410-13 (2010).   LAD claims based upon a perceived disability still require "a

perceived characteristic that, if genuine, would qualify a person for the protections of the LAD."

See Cowher v. Carson & Roberts, 425 N.J. Super. 285, 296 (App. Div. 2012).

Count One fails to state a claim because, Plaintiff does not identify the disability that he

believes Defendants perceived him as having or that any action taken towards was the result of a

perceived disability.   Plaintiff's claim of perceived disability is belied by him pleading that

Defendant repeatedly asked him to return to work.  (Comp. ¶¶24, 31, 33).  Courts have held that

an employer requesting an employee to return to work refutes any claim the employer perceived

the employee as disabled.  See Hilinski v. Potter, 2006 WL 2569214 (D.N.J. September 1, 2006);

15

Endres v. Techneglas, Inc., 139 F.Supp.2d 624, 636 (M.D. Pa. 2001) (finding that where defendant offered plaintiff an opportunity to return to the workplace, the defendant did not perceive the plaintiff to be disabled); Gaul v. AT & T, Inc., 955 F. Supp. 346, 351 (D.N.J.1997) (noting that employer's request that the plaintiff return to work on a special project indicated that the defendant did not perceive the plaintiff to be disabled).   Accordingly, Plaintiff's LAD claim should be dismissed for failure to state a claim.

      D.  Plaintiff Cannot Bring A Claim For Discrimination Under The ESLL (Count Two) Because That Claim Was Waived By His Union.

In Count Two, Plaintiff brings a claim for violation of the ESLL.  (Comp. ¶48).  In his Complaint, Plaintiff fails to plead facts that would support the application of the ESLL to Defendants nor can he plead such facts.  The ESLL does not apply to Plaintiff because Plaintiff was a member of 1199 SEIU United Healthcare Workers East, New Jersey Region ("Union") and the Union waived his rights under the ESLL.

On or about May 30, 2019, the Union and Genesis entered into a Memorandum of Agreement ("MOA") that covered, among others, "Maintenance Employees" employed at the "Park Place Center Facility."  (Ex. B, pg. 1).  Pursuant to that MOA, Union and Genesis agreed:

> The parties acknowledge that the Sick Leave benefit under the terms of this Agreement are superior to the benefit as currently set forth in the New Jersey Earned Sick Day Law which went into effect on or around October 29,2018. The Union thus waives all rights under the New Jersey Earned Sick Day Law. In the event that the New Jersey Earned Sick Day Law is modified to provide a superior benefit to that offered in this Agreement, the Union reserves its right to reopen this Agreement to bargain over this one issue.

(Ex. B, pg. 2).  The Union had the right to waive its members' rights under the ESLL pursuant to N.J.S.A. 34:11D-8(4).  N.J.S.A. 34:11D-8(4) states, in pertinent part, "Employees or employee representatives may waive the rights or benefits provided under this act during the negotiation of a collective bargaining agreement."   The Union exercised its authority under this provision and

waived its members', including Plaintiff, rights under the ESLL.  As a result, Plaintiff cannot now

assert a claim under the ESLL.  For that reason, Plaintiff's claim under the ESLL fails to state a

cause of action and should be dismissed.

>    E.  Count Six Must Be Dismissed Because The FFCRA Does Not Apply To
>        Employees Of Nursing Homes.

Count Six, alleging interference under the FFCRA, must be dismissed because the

regulations exclude nursing homes from being subject to the FFCRA.

In response to the economic and public health disruption caused by the coronavirus

pandemic, the FFCRA was passed on March 18, 2020. Pub. L. No. 116-127, 134 Stat. 178 (Mar.

18, 2020).  The FFCRA requires paid sick leave and emergency family leave for employees unable

to work because of the coronavirus pandemic. Division C of the FFCRA is the Emergency Family

and Medical Leave Expansion Act ("EFMLEA"). FFCRA §§ 3101-3106. The EFMLEA took

effect on April 2, 2020, see id. § 3106; and temporarily expands the Family and Medical Leave

Act ("FMLA") through December 31, 2020. See FFCRA § 3102(a)(1) (adding FMLA §

102(a)(1)(F)).

On April 1, 2020, the Department of Labor released a final rule ("Final Rule") to implement

the FFCRA's paid sick leave and emergency family leave provisions. Paid Leave Under the

Families First Coronavirus Response Act, 85 Fed. Reg. 19,326 (Apr. 6, 2020) (codified at 29

C.F.R. Part 826); see also Paid Leave Under the Families First Coronavirus Response Act;

Corrections, 85 Fed. Reg. 20, 156 (Apr. 10, 2020) (correcting specified preamble and regulatory

text).  The Final Rule took effect on April 2, 2020 and expires on December 31, 2020. 85 Fed.

Reg. at 19,349 (§ 826.10(b)).

In pertinent part, the Final Rule excludes from coverage under the FFCRA employees who

are "health care providers" and "emergency responders."  Pursuant to the Final Rule, "An

Employer whose Employee is a health care provider or an emergency responder may exclude such Employee from the EPSLA's Paid Sick Leave requirements and/or the EFMLEA's Expanded Family and Medical Leave requirements." 85 Fed. Reg. at 19,351 (§ 826.30(c)(1)(i)). A "health care provider" is defined to include, among others:

> anyone employed at any doctor's office, hospital, health care center, clinic, postsecondary educational institution offering health care instruction, medical school, local health department or agency, nursing facility, retirement facility, nursing home, home health care provider, any facility that performs laboratory or medical testing, pharmacy, or any similar institution, Employer, or entity[,] [including] any permanent or temporary institution, facility, location, or site where medical services are provided that are similar to such institutions,

85 Fed. Reg. at 19,351 (§ 826.30(c)(1)(i)). The Department of Labor has embraced an expansive definition of the term "health care provider" to include essentially anyone who works at a nursing home. This expansive definition presumably reflects the crucial role that all aspects of the health care system play in addressing the ongoing public health crisis occasioned by COVID-19.

Defendants satisfy the definition of "health care provider" under the Final Rule because, they may be considered a "nursing facility" or "nursing home." As a result, Plaintiff cannot bring a claim under the FFCRA because, the FFCRA does not apply to employees of "health care providers." For the aforementioned reasons, Count Six should be dismissed.

F. Count Seven Of The Complaint, Seeking "Equitable Relief," Should Be Dismissed Because Equitable Relief Is Not A Cause Of Action.

Count Seven of Plaintiff's Complaint should be dismissed because equitable relief is a remedy for an alleged wrong, not a separate claim to be brought by a plaintiff. Courts have routinely dismissed counts that plead a remedy and not a cause of action. See e.g., O'Connor v. Harms, 111 N.J. Super. 22, 30 (App. Div. 1970) (finding punitive damages cannot be awarded unless there is an independent cause of action for compensatory damages); Barber v. Hohl, 40 N.J. Super. 526, 534 (App. Div. 1956) (standing for same proposition). There is no separate cause of

action for equitable relief under State Law, and as such, Count Seven of the Complaint should be dismissed as to all Defendants.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Counts One, Two, Three, Four, Six and Seven of the Complaint with prejudice.

Respectfully submitted,

**GENOVA BURNS LLC**

Dated: July 29, 2020

/s/*Peter Berk*
James Bucci, Esq.
Peter Berk, Esq.
Two Riverside Drive, Suite 502
Camden, New Jersey 08103
(856) 968-0686
Attorneys for Defendants,
2 Deer Park Drive Operations
LLC d/b/a Park Place Center
and Genesis Healthcare LLC.
